UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------x

EMEKA IBEKWEH,

                    Plaintiff,              **MEMORANDUM & ORDER**
                                            22-CV-1587(EK)(SJB)

          -against-

ASCEND LEARNING, INC., and JOHN/JANE
DOES 1-5,

                    Defendants.

-------------------------------------x
ERIC KOMITEE, United States District Judge:

          Plaintiff Emeka Ibekweh brings various constitutional

claims against his former employer, defendant Ascend Learning,

Inc. ("Ascend").  Proceeding *pro se*, he alleges that Ascend

improperly suspended and terminated him for failing to comply

with its COVID-19 vaccination policy.  Ascend moved to dismiss

the complaint for failure to state a claim.  For the reasons set

out below, the motion to dismiss is granted.

## I.  Background

          The following factual background is taken from

allegations in the complaint, unless otherwise specified, and

assumed to be true for purposes of this motion.

          Ibekweh began working at Ascend in 2013 as its

Managing Director of Technology.  Compl. ¶ 9, ECF No. 1.  The

complaint describes Ascend only as a "Corporation granted

charter by the State of New York to exist," *see id.* ¶ 10, but as discussed below, it appears to be a charter school.  In August 2021, in response to the COVID-19 pandemic, New York City began requiring individuals to provide proof of vaccination to enter certain indoor businesses.  *Id.* ¶¶ 28-29.  Following New York City's vaccine mandate, Ascend implemented its own policy, requiring employees to provide such proof as a condition of continued employment.  *Id.* ¶¶ 6, 30.  Ibekweh received the first dose of the vaccine and submitted proof to Ascend.  *Id.* ¶¶ 12, 22.  At Ascend's request, he later provided proof that he had received a second dose as well.  *Id.* ¶ 13.

Thereafter, Ascend's administrators "summoned [Ibekweh] to an inquisitorial phone conference," where they expressed "doubts regarding the veracity" of his proof of vaccination.  *Id.* ¶¶ 14-15.  During this conference, Ibekweh was told that his vaccination card was "suspicious" because it indicated a time frame between doses of "less than 21 days apart," showed identical "lot numbers" for the first and second dose, and listed the location of vaccination only as "CVS" (with no store number).  *Id.* ¶¶ 16-23.  He asked whether cards submitted by other staff members reflected similar defects, but he received no answer.  *Id.* ¶ 21.

Ibekweh alleges that he had previously informed the conference participants that he would be receiving his second

2

dose early to comply with Ascend's policy, and that they had assured him that doing so would allow him to maintain employment.  *Id.* ¶¶ 18-19.  At the administrators' request, he later "provided . . . his doctor's name and office address for further verification."  *Id.* ¶ 23.

Afterwards, Ibekweh received notice that he had been suspended without pay, beginning on December 10, 2021, for failure to provide proof of compliance with Ascend's vaccine mandate.  *Id.* ¶ 24.  He was then "coerced to sign" a separation agreement, but declined to do so.  *Id.* ¶ 9.

The complaint sets out three causes of action, styled as separate "Counts."  Invoking Section 1983, Ibekweh asserts violations of the Fourteenth Amendment's Equal Protection and Due Process Clauses, as well as the Supremacy Clause.  In addition, reading the complaint liberally in light of Plaintiff's *pro se* status, the Court also considers whether he pleads a federal claim for employment discrimination under Title VII of the Civil Rights Act of 1964.

## II.  Legal Standard

On a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint."  *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir.

2020).[1]   In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). *Pro se* complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983).  Thus, to survive a motion to dismiss, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011).  Courts "are not bound to accept as true a legal

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

Ascend moves to dismiss the complaint, first and foremost, on the ground that Ibekweh fails to plausibly allege state action — a prerequisite to bringing claims under Section 1983. *See* Mem. of Law in Supp. of Def.'s Mot. to Dismiss ("Def. Mot.") 4–10, ECF No. 22. Ibekweh's complaint levels conclusory allegations that Ascend acted under color of state law, but no factual content in support of those allegations. *See, e.g.*, Compl. ¶ 2 (plaintiff is seeking "redress against state actors in their official capacity to end the deprivation, under state law," of his rights); *id.* ¶ 6 ("Plaintiff alleges that defendants Ascend [sic], acting as alter egos enmeshed with" New York City, are properly characterized as state actors).

Despite the complaint's near-silence as to the nature of Ascend's purpose, organization, and oversight, the Court construes the complaint to allege that Ascend is a charter school under New York state law. *See id.* ¶ 10. Ascend, for its part, asserts that it is a "private charter school," and then goes on to treat its "private entity" status as a foregone

conclusion.  *See, e.g.*, Def. Mot. 1, 4-6.[2]  But the questions of whether and under what circumstances a New York charter school and its employees act under the color of state law actor entail a more complicated inquiry.

The Second Circuit has not resolved the question, but district courts have considered charter schools to be state actors for purposes of Section 1983 claims, in at least some circumstances.  *See, e.g.*, *Matwijko v. Bd. of Trustees of Glob. Concepts Charter Sch.*, No. 04-CV-663A, 2006 WL 2466868, at *5 (W.D.N.Y. Aug. 24, 2006) (teacher terminated by charter school, in alleged violation of First Amendment rights); *Patrick v. Success Acad. Charter Sch., Inc.*, 354 F. Supp. 3d 185, 209 (E.D.N.Y. 2018) (student subject to long-term suspension, in alleged violation of due process rights).

Certain provisions of New York law undercut Ascend's suggestion that it is *de facto* a private entity.  For example, New York's Education Law defines a charter school as an "independent and autonomous *public* school," with "[t]he charter entity and the board of regents" considered "the *public* agents authorized to supervise and oversee the charter school."  N.Y. Educ. Law § 2853(1)(c) (emphases added).  Charter schools must

---

[2] Ascend's own website identifies it as "a network of K-12 *public* schools in Brooklyn."  Ascend, https://ascendlearning.org/ (last visited Sept. 24, 2023) (emphasis added).

"meet the same health and safety, civil rights, and student assessment requirements applicable to *other public* schools," and they can receive financing from the school district in which they are located.  *Id.* §§ 2854(1)(b), 2856 (emphasis added).

In describing itself as a private entity in conclusory fashion, Ascend's briefing does not engage with the questions informing the state-action analysis as it applies to charter schools.  In the end, neither will the Court.  There is no need to do so here: even assuming that Ascend *is* a state actor for purposes of Ibekweh's Section 1983 claims, the complaint fails to state any claim upon which relief can be granted.[3]

## A.   Equal Protection Claim

Ibekweh first alleges that Ascend's vaccination policy and its enforcement thereof violated the Equal Protection Clause.  That constitutional provision "is essentially a direction that all persons similarly situated should be treated alike."  *City of Cleburne, Tex. v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985); *see Brown v. City of Syracuse*, 673 F.3d

---

[3] Ibekweh also includes, in the case caption, defendants "John/Jane Does 1–5."  The complaint, however, alleges no facts as to the identities or actions of these Doe defendants, and Ibekweh has not otherwise made any attempt to identify or serve them.  Any claims against the Doe defendants are therefore dismissed.  *See* Fed. R. Civ. P. 8(a)(2) (requiring a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief"); *Gabriel Cap., L.P. v. Natwest Fin., Inc.*, 137 F. Supp. 2d 251, 269 (S.D.N.Y. 2000) (dismissing claims against Doe defendants on Rule 8 grounds).  To the extent that the Doe Defendants are employees at Ascend, claims against them fail for the same reasons as those brought against Ascend.

141, 151 (2d Cir. 2012).  "[I]t is axiomatic that [to establish an equal protection violation] a plaintiff must allege that similarly situated persons have been treated differently." *Gagliardi v. Village of Pawling*, 18 F.3d 188, 193 (2d Cir. 1994).  Here, Ibekweh fails to identify any similarly situated persons who were treated differently; indeed, he does not allege that any other Ascend employee was permitted to work despite not complying with Ascend's vaccination policy.  That alone warrants dismissal of Ibekweh's equal protection claim.  *See Kane v. de Blasio*, 623 F. Supp. 3d 339, 359 (S.D.N.Y. 2022) (dismissing claim for failure to allege differential treatment in education department's enforcement of its COVID vaccine mandate).

Ibekweh's equal protection claim also fails for another reason.  "The Equal Protection Clause does not require that all persons be dealt with identically, but it does require that a distinction made have some relevance to the purposes for which the classification is made."  *Clementine Co., LLC v. Adams*, 74 F.4th 77, 89 (2d Cir. 2023).  Thus, where the law at issue "neither burdens a fundamental right nor targets a suspect class," the Court will generally "uphold the classification so long as it bears a rational relation to some legitimate end." *Winston v. City of Syracuse*, 887 F.3d 553, 560 (2d Cir. 2018).

Ibekweh does not allege that he is a member of any legally protected class, nor can he point to any fundamental

right burdened by Ascend's vaccination policy.  Indeed, the
Second Circuit and the Supreme Court "have consistently
recognized that the Constitution embodies no fundamental right
that in and of itself would render vaccine requirements imposed
in the public interest, in the face of a public health
emergency, unconstitutional."  *We The Patriots USA, Inc. v.
Hochul*, 17 F.4th 266, 293 (2d Cir. 2021), *cert. denied sub nom.
Dr. A. v. Hochul*, 142 S. Ct. 2569 (2022); *see We The Patriots
USA, Inc. v. Conn. Off. of Early Childhood Dev.*, 76 F.4th 130,
156 (2d Cir. 2023) ("[A]bsolute freedom from unwanted
vaccination is [not] a fundamental right.").[4]

        Accordingly, rational basis review is applicable here.
That standard requires the state only "to have chosen a means
for addressing a legitimate goal that is rationally related to
achieving that goal."  *Kane v. De Blasio*, 19 F.4th 152, 166 (2d
Cir. 2021).  "Rational basis review contemplates a strong
presumption of validity, and those attacking the rationality of
the legislative classification have the burden to negative every

---

[4] The Second Circuit has explicitly rejected the argument that the
Supreme Court "implicitly overruled" *Jacobson v. Massachusetts*, 197 U.S. 11
(1905), which recognized that a vaccination mandate was a valid exercise of
state power, in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63
(2020).  *Cf. Klaassen v. Trs. of Indiana Univ.*, 7 F.4th 592, 593 (7th Cir.
2021) (explaining, post-*Roman Catholic Diocese*, that a substantive due
process right "depends on the existence of a fundamental right ingrained in
the American legal tradition.  Yet *Jacobson*, which sustained a criminal
conviction for refusing to be vaccinated, shows that plaintiffs lack such a
right.").

conceivable basis which might support it*." Nassau & Suffolk Cnty. Taxi Owners Ass'n, Inc. v. New York*, 336 F. Supp. 3d 50, 77 (E.D.N.Y. 2018). "In applying this standard, a defendant's motion to dismiss will be granted when neither the complaint nor the non-moving party's opposition negate any reasonably conceivable state of facts that could provide a rational basis for the challenged classification." *Id.*

Such is the case here: Ibekweh fails to allege that Ascend's policy was an irrational means to achieve the legitimate state goal of preventing the spread of COVID-19. *See Kane*, 19 F.4th at 166 ("[New York City's] Vaccine Mandate plainly satisfies [the rational basis] standard . . . . This was a reasonable exercise of the State's power to act to protect the public health."); *see, e.g.*, Andre-*Rodney v. Hochul*, 618 F. Supp. 3d 72, 80–81 (N.D.N.Y. 2022) (dismissing equal protection challenge to state vaccine policy); *Maniscalco v. New York City Dep't of Educ.*, 563 F. Supp. 3d 33, 41 (E.D.N.Y. 2021), *aff'd*, No. 21-2343, 2021 WL 4814767 (2d Cir. Oct. 15, 2021).

Ibekweh's equal protection claim must therefore be dismissed.[5]

---

[5] Although not explicitly stated in the complaint, any substantive due process claim for the violation of any asserted right to "bodily integrity" would likewise fail. *See We The Patriots USA*, 17 F.4th at 293; *Marciano v. de Blasio*, 589 F. Supp. 3d 423, 434 (S.D.N.Y. 2022).

**B.    Procedural Due Process Claim**

Ibekweh also claims that Ascend's policy of conditioning employment on vaccination against COVID-19 violated his Fourteenth Amendment right to procedural due process. Compl. ¶¶ 45-46.  To state such a claim, a plaintiff must establish that he (1) possessed a protected liberty or property interest and (2) faced a deprivation of that interest without constitutionally adequate process.  *See O'Connor v. Pierson*, 426 F.3d 187, 197 (2d Cir. 2005).  Ibekweh alleges that he has a "liberty interest in his bodily integrity" and "a property interest in his remunerative employment career."  Compl. ¶ 45. Ascend, he alleges, deprived him of due process by suspending him without pay for failing to provide proof of receiving both doses of the vaccine.  *Id.* ¶ 24.  This claim fails because Ibekweh has not adequately alleged the first element — that he had a protected liberty or property interest.

---

Nor, then, can Ibekweh succeed on his claim that Ascend's policy violated the unconstitutional conditions doctrine by forcing him to give up any right to maintain his employment.  *See* Compl. ¶¶ 42-46.  The unconstitutional conditions doctrine "vindicates the Constitution's enumerated rights by preventing the government from coercing people into giving them up.*"  Koontz v. St. Johns River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).  Thus, "the government may not place a condition on the receipt of a benefit or subsidy that infringes upon the recipient's constitutionally protected rights, even if the government has no obligation to offer the benefit in the first instance."  *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 231 (2d Cir. 2011), *aff'd*, 570 U.S. 205 (2013).  Because Ibekweh has not identified any right protected by substantive due process, he cannot allege that his employment is conditioned on the "giving up" of that right.  *See Andre-Rodney v. Hochul*, 618 F. Supp. 3d 72, 84-85 (N.D.N.Y. 2022) (dismissing state security officer's claim that vaccine mandate unconstitutionally conditioned continued employment on violation of fundamental right to refuse vaccination).

"Protected liberty interests may arise from two sources — the Due Process Clause itself and the laws of the States." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989).  As noted above, Ibekweh does not have any right under the Due Process Clause to refuse to receive a COVID-19 vaccine, and he therefore fails to allege a protected liberty interest. *See We The Patriots*, 17 F.4th at 293; *see also Kane*, 623 F. Supp. 3d at 361 (dismissing procedural due process challenge to vaccine mandate because plaintiffs alleged no liberty interest).

As to a property interest, "[a]n interest in continued employment" may satisfy the first prong of the due process requirement in certain circumstances.  *Rasulo v. Hartnett*, 831 F. Supp. 2d 714, 721 (S.D.N.Y. 2011).  For example, "a person may possess a protected interest in public employment if contractual or statutory provisions guarantee continued employment absent 'sufficient cause' for discharge or he can prove a de facto system of tenure."  *Abramson v. Pataki,* 278 F.3d 93, 99 (2d Cir. 2002); *Donato v. Plainview-Old Bethpage Cent. School Dist.,* 96 F.3d 623, 629 (2d Cir. 1996) ("State law . . . guides us in deciding whether plaintiff possessed only an unprotected unilateral expectation of employment, or instead had a constitutionally-protected 'legitimate claim of entitlement.'").  An "at-will [state] employee," however, "generally has no procedural due process claim based on the

Constitution at all." *De La Cruz v. Guilliani*, No. 00-CV-7102, 2002 WL 32830453, at *13 (S.D.N.Y. Aug. 26, 2002).

Here, Ibekweh pleads no factual allegations as to the terms of his employment as Managing Director of Technology with Ascend.  The complaint does not indicate, for instance, whether he was an at-will employee or could be terminated only for cause.  Nor does he point to any contractual or statutory provision from which the Court can infer a protected interest in continued employment.  Because Ibekweh fails to allege that he had a protectable property interest in his employment at Ascend, his procedural due process claim must also be dismissed.[6]

## C.   Supremacy Clause Claim

Next, Ibekweh asserts that Ascend's vaccination policy violates the Constitution's Supremacy Clause — or, framed differently, that Ascend's vaccination mandate conflicts with the federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 360bbb-3,

---

[6] The complaint also fails to allege the second element of the procedural due process inquiry — deprivation of an interest without constitutionally adequate process.  Ibekweh does not allege anywhere what process was due, or what process he did or did not receive with regard to his suspension and termination.  *See, e.g.*, *Munafo v. Metro. Transp. Auth.*, 285 F.3d 201, 212 (2d Cir. 2002) ("An employee who has a property interest in his employment is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story, before he is subjected to the loss of employment."); *O'Connor v. Pierson*, 426 F.3d 187, 198 (2d Cir. 2005) ("[T]he Constitution mandates only that [pre-deprivation] process include, at a minimum, notice and the opportunity to respond.").

which he asserts should preempt his employer's mandate.  *See*
Compl. ¶¶ 47-58.

"[T]he Supremacy Clause is not the source of any
federal rights . . . and certainly does not create a cause of
action."  *Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S.
320, 324-25 (2015).  Ibekweh, however, attempts to bring a
Supremacy Clause-based claim under 42 U.S.C. § 1983.  Compl.
¶¶ 57-58.  The Second Circuit has explained that "[a] violation
of the Supremacy Clause is distinct from," and does not in
itself "give rise to, a violation of federal rights actionable"
under Section 1983.  *Wachovia Bank, N.A. v. Burke*, 414 F.3d 305,
321 (2d Cir. 2005).  Indeed, Section 1983 offers a remedy "only
[for] violations of *rights*, not *laws*."  *Gonzaga Univ. v. Doe*,
536 U.S. 273, 283 (2002).  For a Section 1983 action to lie,
then, the federal statute at issue — here, the FDCA — must
create a federal right.  *Wachovia*, 414 F.3d at 321-22.  This is
so because Section 1983 "merely provides a mechanism for
enforcing individual rights secured elsewhere" in federal law;
Section 1983 "by itself does not protect anyone against
anything."  *Gonzaga*, 536 U.S. at 285.

Ibekweh points to the emergency use authorization
provision of the FDCA as the source of his federal right.
Compl. ¶ 52; *see also id.* ¶ 1 ("Plaintiff contends that the
aforementioned acts of defendant were a clear violation of the

14

EUA [Emergency Use Authorization] statute."). He argues that
Section 360bbb-3(e)(1)(A)(ii) requires that individuals be given
the "option to accept or refuse" a product, and be informed of
its potential risks and benefits, authorized on an emergency
basis under that section. *Id.* ¶¶ 27, 53.

The Supreme Court has explained that determining
whether a statute confers a right for purposes of a Section 1983
action "is no different from the initial inquiry in an implied
right of action case, the express purpose of which is to
determine whether or not a statute confers rights on a
particular class of persons." *Gonzaga*, 536 U.S. at 285. The
key question is whether "Congress intended to confer individual
rights upon a class of beneficiaries," and the answer must be
rooted in the text and structure of the statute. *Id.* at 285-87.
Ultimately, "anything short of an unambiguously conferred right"
will not support a cause of action under Section 1983. *Id.* at
283.

Section 360bbb-3 does not provide an individual right.
The Second Circuit has held that no private right of action
exists to enforce the FDCA, noting that the statute explicitly
restricts enforcement to suits by the United States. *See PDK
Labs, Inc. v. Friedlander*, 103 F.3d 1105, 1113 (2d Cir. 1997)
(citing 21 U.S.C. § 337(a)). Ibekweh has failed to identify any

right conferred by Section 360bbb-3 that he can vindicate in a Section 1983 action.  This claim, too, must be dismissed.

**D.    Claim for Racial Discrimination in Employment**

Finally, Ibekweh alleges that Ascend used its vaccination policy to pursue "a racially biased witch hunt" against him, and that his failure to comply with the vaccination policy was a pretext for his suspension and termination.  *See* Compl. ¶ 32; *see also id.* ¶ 14.  Although he does not assert a specific cause of action based on this conduct, in light of his *pro se* status, the Court briefly considers whether the complaint plausibly states a federal claim for racial discrimination in employment.

Section 2000e-2(a)(1) of Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  To plead a *prima facie* case of racial discrimination, a plaintiff must show: "(1) [he] is a member of a protected class; (2) [he] satisfactorily performed the duties required by the position; (3) [he] was discharged; and (4) the discharge occurred in circumstances giving rise to an inference of unlawful discrimination."  *Lenzi v. Systemax, Inc.*, 944 F.3d 97, 107 (2d Cir. 2019).

The complaint falls well short of plausibly alleging a Title VII claim.  Ibekweh alleges that Ascend implemented "an endemic impermissible policy of racial profiling" by questioning and then suspending him for non-compliance with its vaccine policy.  Compl. ¶ 14.  Among other deficiencies, however, he does not allege that he is a member of a protected class.  While referring to racial bias, he does not specify his race.  The complaint also fails to allege any facts that raise an inference of unfair treatment or termination due to his race.  He does not plead, for example, that non-members of the protected class received accommodations for, or exemptions from, Ascend's vaccination policy.  *See, e.g.*, *Marte v. Montefiore Med. Ctr.*, No. 22-CV-03491, 2022 WL 7059182, at *4 (S.D.N.Y. Oct. 12, 2022).  "[A] complaint consisting of nothing more than naked assertions" of racial bias, and "setting forth no facts upon which a court could find a violation of [Title VII], fails to state a claim."  *Martin v. N.Y. State Dep't of Mental Hygiene*, 588 F.2d 371, 372 (2d Cir. 1978).

### IV.  Conclusion

For the foregoing reasons, Ascend's motion is granted, and the complaint is dismissed without prejudice.  In light of Plaintiff's *pro se* status, and because additional pleading may cure at least some of the substantive deficiencies identified above, the Court grants Plaintiff leave to file an amended

complaint within thirty days from the entry of this Order.  *See Grullon v. City of New Haven*, 720 F.3d 133, 140 (2d Cir. 2013). Otherwise, the case will be dismissed with prejudice, and judgment shall enter.

        SO ORDERED.


                /s/ Eric Komitee
              ERIC KOMITEE
              United States District Judge


Dated:    September 27, 2023
         Brooklyn, New York