```
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------x

EMEKA IBEKWEH,

                    Plaintiff,                 MEMORANDUM & ORDER
                                               22-CV-1587(EK)(SJB)

        -against-

ASCEND LEARNING, INC., and JOHN/JANE
DOES 1-5,

                    Defendants.

---------------------------------------x
```

ERIC KOMITEE, United States District Judge:

Plaintiff Emeka Ibekweh brought various constitutional claims against his former employer, defendant Ascend Learning, Inc. ("Ascend"). This Court dismissed Ibekweh's first complaint for failure to state a claim, but granted leave to amend. He then filed an amended complaint, which Ascend has again moved to dismiss. Because Ibekweh's amended filing did not remedy the defects in his original complaint, the amended complaint is now dismissed with prejudice.

## I. Background

The Court assumes the parties' familiarity with the relevant factual background, as laid out in its prior dismissal order. *See* Memorandum & Order on Motion to Dismiss 1-3 ("Prior Op."), ECF No. 28. In brief, Ibekweh was a Managing Director of Technology at Ascend. Amended Complaint ¶ 12 ("Amend. Compl."),

ECF No. 29. He alleges his employment with Ascend was terminated due to the employer's doubts about the "veracity of the proofs he provided" to establish his receipt of the COVID-19 vaccine and comply with Ascend's vaccination policy. *Id.* ¶¶ 17-28. And he "believes that the reason he was subjected to extraordinary inquest regarding the veracity of his vaccination proof has to do with his race, as an African American . . . ." *Id.* ¶ 24.

Ibekweh's original complaint set out three numbered causes of action: "Count I: Claims Pursuant to 42 U.S.C § 1983 Against all Defendants for Violations of Equal Protection Clause," "Count II: Violation of the Unconstitutional Conditions Doctrine and the Fourteenth Amendment's Right to Due Process," and "Count III[:] Violation of the Supremacy Clause." Complaint at 7-11, ECF No. 1. The Court dismissed the equal protection claim based on (among other things) the failure to support a plausible inference of discrimination. The procedural due process claim was dismissed for the complaint's failure to adequately allege a protected liberty or property interest; the related unconstitutional conditions claim failed because Ibekweh had not alleged that his employment was conditioned on giving up a constitutionally protected right. The Court dismissed the Supremacy Clause claim because that clause confers no substantive rights.

The prior complaint did not set forth a cause of action based on Title VII. But it did allege that "Ascend used its vaccination policy to pursue a 'racially biased witch hunt' against" Ibekweh and used "his failure to comply with the vaccination policy as pretext for his suspension and termination." Prior Op. 16. Given the explicit styling of Counts I through III, the Court expressed doubt that Ibekweh intended to allege a Title VII claim. But because of his *pro se* status, the Court assumed he intended to do so, and went on to explain why that claim could not proceed: because Ibekweh did not allege he was a member of a protected class or that he was treated differently because of his race. *Id.* 16-17.

The amended complaint sets out the same three causes of action: invoking Section 1983, Ibekweh asserts violations of the Equal Protection Clause, the Due Process Clause and Unconstitutional Conditions Doctrine, and the Supremacy Clause. Amend. Compl. at 8-11. Ibekweh has now alleged his race (he is African American). *Id*. ¶¶ 2, 12. He also added the allegation that his "Caucasian colleagues were not put through the same racially biased burner negating equality before the eyes of the law." *Id.* ¶ 24; *see also id.* ¶¶ 27, 37, 53. Ibekweh no longer alleges that he was deprived of a property interest. Instead, the amended complaint alleges that he "possesses . . . a liberty interest in his employment as his sole means of survival and

3

care for his family." *Id.* ¶ 46. Finally, Ibekweh added allegations regarding Ascend's status as a state actor. *Id.* ¶¶ 6-9.

Once again, however, Ibekweh has included no claim or count alleging a Title VII violation, notwithstanding this Court's prior discussion of that statute. Indeed, the amended complaint does not reference Title VII at all.

## II.  Legal Standard

On a motion to dismiss under Rule 12(b)(6), "the court's task is to assess the legal feasibility of the complaint." *Lynch v. City of New York*, 952 F.3d 67, 75 (2d Cir. 2020).[1] In doing so, the Court "must take the facts alleged in the complaint as true, drawing all reasonable inferences in [the plaintiff's] favor." *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 91 (2d Cir. 2007). *Pro se* complaints are "held to less stringent standards" than pleadings drafted by attorneys, and the Court will read a *pro se* complaint liberally and interpret it as raising the strongest arguments it suggests. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

---

[1] Unless otherwise noted, when quoting judicial decisions this order accepts all alterations and omits all citations, footnotes, and internal quotation marks.

4

Still, a *pro se* plaintiff is not exempt from "compliance with relevant rules of procedural and substantive law." *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983). Thus, to survive a motion to dismiss, the complaint must plead sufficient "facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

"A claim is plausible when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Matson v. Bd. of Educ.*, 631 F.3d 57, 63 (2d Cir. 2011). Courts "are not bound to accept as true a legal conclusion couched as a factual allegation," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

### III. Discussion

Ascend moves to dismiss the complaint again, this time with prejudice. We granted leave to amend the prior pleading because a *pro se* plaintiff should be afforded "leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Chavis v. Chappius,* 618 F.3d 162, 170 (2d Cir. 2010). But an amended complaint will be dismissed if it continues to omit a valid

claim. *See, e.g., Romero v. Smalls*, No. 23-CV-3706, 2023 WL 5530373, at *2 (S.D.N.Y. Aug. 28, 2023) (dismissing amended *pro se* complaint with prejudice after failure to cure defects identified in original complaint); *Sklodowska-Grezak v. Marzec*, No. 16-CV-7001, 2017 WL 5508722, at *1 (E.D.N.Y. Jan. 25, 2017) (same).

**A.  Equal Protection**

Ibekweh continues to allege that Ascend's enforcement of its vaccination policy violated the Equal Protection Clause. The new allegations in the amended complaint are still insufficient to state such a claim.

Ibekweh does not allege that Ascend's vaccination policy classified people on the basis of race — only that employees of different races were subject to different standards of proof regarding vaccination.  He "believes" that his race was "the reason that he was subjected to [an] extraordinary inquest regarding the veracity of his vaccination proof," and that his "Caucasian colleagues were not put through the same racially biased burner."  Am. Compl. ¶ 24; *see also id.* ¶ 37 (plaintiff was "compelled to prove what other non-Black staff and workers were not required to prove").  Ibekweh asked the defendants "if indeed all [vaccination] cards," including those submitted by staff members who were not African-American, revealed the same

6

"alleged defect" as his proof. *Id.* ¶ 25. But the defendants "refused to provide a response" to this inquiry. *Id.*

Plaintiff's equal-protection claim is thus best understood as a challenge to "a facially neutral law or policy that has been applied in an intentionally discriminatory manner." *Pyke v. Cuomo*, 258 F.3d 107, 109 (2d Cir. 2001). A plaintiff alleging such a violation "is not obligated to show a better treated, similarly situated group of individuals of a different race in order to establish a claim of denial of equal protection." *Id.* at 110. He must, however, still "plead . . . that the defendant acted with discriminatory purpose." *Turkmen v. Hasty*, 789 F.3d 218, 252 (2d Cir. 2015), *judgment rev'd in part, vacated in part on other grounds, sub nom. Ziglar v. Abbasi,* 582 U.S. 120 (2017).

The Second Circuit has counseled that "equal protection claims under § 1983 cannot be based solely on the disparate impact of a facially neutral policy. It is well established that proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause." *Reynolds v. Barrett*, 685 F.3d 193, 201-02 (2d Cir. 2012); *see also Washington v. Davis*, 426 U.S. 229, 242 (1976); *Pyke v. Cuomo*, 567 F.3d 74, 78 (2d Cir. 2009). And discriminatory intent requires "a decisionmaker's undertaking a course of action because of, not merely in spite of, the

7

action's adverse effects upon an identifiable group." *Turkmen*, 789 F.3d at 252; *see also Iqbal*, 556 U.S. at 676 (same). "The mere fact that something bad happens to a member of a particular racial group does not, without more, establish that it happened *because* the person is a member of that racial group." *Williams v. Blanchard*, No. 16-CV-4124, 2016 WL 11750104, at *5 (S.D.N.Y. July 25, 2016). Without such proof — or at this stage, such allegations — "plaintiffs cannot proceed." *Reynolds*, 685 F.3d at 202.

In *Turkmen*, the Second Circuit held that the plaintiffs — individuals arrested in the aftermath of the September 11 attacks on the World Trade Center — had plausibly pleaded that the law-enforcement defendants acted with discriminatory purpose. Among other things, the complaint alleged that the "head of the New York FBI field office [had] stated that an individual's Arab appearance and status as a Muslim were factors to consider in the investigation." 789 F.3d at 253. FBI agents had also allegedly dismissed a tip stating certain facts about Russian nationals while pursuing an identical tip concerning Egyptian subjects, and ignored concerns expressed "early in the investigation that detainees were being held simply on the basis of their ethnicity." *Id.*

By contrast, in *Pyke*, summary judgment was granted against the plaintiffs because they failed to proffer enough

8

evidence of discriminatory intent regarding the facially neutral policies at issue — roadblocks at the edge of a Native American reservation, informing a Mohawk organization when police entered the reservation, and ceasing regular police patrols within the reservation. 567 F.3d at 78.[2] The Second Circuit observed that even if "Plaintiffs have shown the existence of a discriminatory impact, they have nonetheless failed to proffer enough evidence of discriminatory *intent*." *Id.*

Ibekweh's complaint contains no factual content that would plausibly suggest discriminatory intent or purpose. He expresses the "belie[f]" that his "Caucasian colleges" were not subjected to the stringent proof requirements that he was. But he asserts no facts that would render that belief plausible. Nor does he levy any allegation that the proof requirements were "undertake[en] . . . because of, not merely in spite of, the[ir] adverse effects upon" African American employees. *See Turkmen*, 789 F.3d at 252. His equal protection claim therefore cannot survive Ascend's motion to dismiss.

---

[2] The *Pyke* panel noted that the facially neutral roadblocks could not sufficiently evidence a "racial" classification unless they were, "for example, so onerous that they could only be explained as a result of racial classification or racial animus." 567 F.3d at 77-78. The court went on to state: "That is not the case here." *Id.* at 78. Here, too, the demand for adequate proof of vaccination cannot, on the amended complaint's allegations, be explained only as a result of racial classification or animus.

9

**B.   Due Process, Unconstitutional Conditions, and the Supremacy Clause**

Turning to his other constitutional claims, Ibekweh has added no allegations that bear on his procedural due process or Supremacy Clause claims (or support his assertion that the unconstitutional conditions doctrine is implicated).

***Procedural Due Process.***  Ibekweh no longer alleges a property interest.  Amended Compl. ¶ 46.[3]  Instead, he claims his employment implicated a liberty interest.  *Id.*  Where a plaintiff claims a deprivation of a liberty interest based on his termination, he must satisfy the requirements for a "stigma-plus claim."  *Guerra v. Jones*, 421 F. App'x 15, 18-19 (2d Cir. 2011).  This includes the "loss of ones' reputation . . . coupled with the deprivation of employment."  *Id.* at 18; *see also Catania v. United Fed'n of Tchrs.,* No. 1:21-cv-1257, 2025 WL 638625, at *11 (S.D.N.Y. Feb. 27, 2025) (where plaintiff lacked a property interest in her employment, she could "invoke the protections of the Due Process Clause where [she] suffered a loss of reputation coupled with the deprivation of a more tangible interest, such as government employment"); *Segal v. City of New York*, 459 F.3d 207, 212 (2d Cir. 2006) (probationary

---

[3] Although "an interest in continued employment" may constitute a property interest if there is a sufficient guarantee of continued employment, the prior complaint did not plead facts sufficient to support the existence of any such guarantee.  *Id.* 12-13 (citing *Abramsom v. Pataki*, 278 F.3d 93, 99 (2d. Cir. 1996)).

10

employee who lacked a property interest in employment could still "invoke the protections of the Due Process Clause" if she alleged "injury to [her] reputation (the stigma) coupled with the deprivation of some tangible interest or property right (the plus), without adequate process"). This is because termination coupled with statements that impugn a plaintiff's reputation may "impair[ ] the prospects of the employee for other employment." *Abramson v. Pataki*, 278 F.3d 93, 101 (2d Cir. 2002). Ibekweh alleges he possessed a "liberty interest in his employment" because it was "his sole means of survival and care for his family." Amended Compl. ¶ 46. He does not, however, allege any loss of reputation or other circumstances that "impair" his future "prospects . . . for other employment." *Abramson*, 278 F.3d at 101. This is fatal to the due process claim.

***Unconstitutional Conditions.*** Ibekweh had previously alleged that the unconstitutional conditions doctrine was violated because Ascend "forced him to give up any right to maintain his employment." Prior Op. 11 n.5. But, as the Court explained, without "identif[ying] any right protected by substantive due process, [Ibekweh] could not allege that his employment is conditioned on the 'giving up' of that right." *Id.* 11-12 n.5. Since Ibekweh has (still) not sufficiently alleged a protected liberty or property interest, this claim, too, cannot proceed.

11

***Supremacy Clause.*** His Supremacy Clause claim also suffers from the same defects identified in the Court's prior order: namely, that the Supremacy Clause itself is not the source of any federal rights or a private cause of action, and the federal law he relied upon — the Food, Drug, and Cosmetic Act — provides no individual right that can be vindicated in a private action, either. *Id.* 13-16.

These claims are therefore dismissed for the same reasons stated in the Court's prior order, this time with prejudice.

**C. Title VII**

In its previous order, the Court observed that Ibekweh "d[id] not assert a specific" Title VII employment discrimination "cause of action based on this conduct." Prior Op. 16. But the Court nevertheless liberally construed Ibekweh's first complaint as if he were asserting a Title VII claim. In his amended complaint, Ibekweh does not say anything about Title VII. He continues to assert only three causes of action. *See* Amend. Compl. ¶ 38-57. While a *pro se* litigant's submission must be read as stating the strongest arguments it suggests, Ibekweh's failure to add a Title VII claim after being given leave to do so suggests that he did not intend to assert a Title VII claim. And the Court may not "read into *pro se* submissions . . . arguments that the submissions themselves do

12

not suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006). The Court therefore will not continue to construe the complaint as asserting a Title VII claim.

The amended complaint is therefore dismissed with prejudice — including as against the Jane and John Doe defendants.[4] "[L]eave to amend may be denied if the plaintiff has already been given an opportunity to amend and has failed to cure the complaint's deficiencies." *Bell v. Doe*, No. 23-CV-5307, 2023 WL 5530696, at *1 (S.D.N.Y. Aug. 28, 2023); *see Chavis,* 618 F.3d at 170 (a *pro se* litigant should be "grant[ed] leave to amend at least once"). Ibekweh has been given leave to amend once. And after Ascend requested that their renewed motion to dismiss be granted with prejudice, Ibekweh did not request leave to amend in his response. *See* Ascend Ltr. 1-2, ECF No. 34; Plaintiff's Opposition 1-4, ECF No. 35. Accordingly, dismissal with prejudice is appropriate.

### IV.  Conclusion

For the foregoing reasons, Ascend's motion is granted, and the amended complaint is dismissed with prejudice.

---

[4] As in his prior complaint, Ibekweh includes defendants "John/Jane Does 1—5" in the case caption. The complaint, however, alleges no facts as to the Doe defendants' identities or actions, and Ibekweh has not made any attempt to identify or serve them. This defect previously led the Court to dismiss the claims against the Doe defendants, *see* Prior Op. 7 n.3, and it does the same here.

SO ORDERED.

                                                 /s/ Eric Komitee

                                                 ERIC KOMITEE  
                                                 United States District Judge

Dated:    March 17, 2025  
            Brooklyn, New York